UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:

LISA DUTTON LOVE,                                    Case No. 6:19-bk-01568-CCJ
                                                     Chapter 7

      Debtor

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

### NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

      Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

      If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, Florida 32801 and serve a copy on the movant's attorney, Stefan Beuge, Esq., Florida Bar No. 68234 of Phelan Hallinan Diamond & Jones, PLLC, 2001 NW 64th Street, Suite 100, Ft. Lauderdale, FL 33309, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.

      If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

By and through its undersigned counsel, Phelan Hallinan Diamond & Jones, PLLC, U.S. Bank Trust, N.A., as Trustee for LSF11 Master Participation Trust ("Movant"), its successors and/or assigns, a secured creditor of the above-referenced Debtor, hereby moves the Court for an Order granting relief from stay pursuant to 11 U.S.C. §362(d) and states:

PH # 95678                           1

1.  This Court has jurisdiction over these matters pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(b)(2)(G).

2.  On March 12, 2019, the Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.

3.  Upon information and belief, the Debtor has not claimed the Property as exempt.

4.  The property located at 24700 WALKABOUT RANCH ROAD, SORRENTO, FL 32776 (hereinafter, the "Property") is legally described as follows:

> **THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:**
>
> **ALL THAT CERTAIN LAND IN LAKE COUNTY, STATE OF FLORIDA, VIZ:**
>
> **THE EAST 605.00 FEET OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 18, TOWNSHIP 19 SOUTH, RANGE 28 EAST, LAKE COUNTY, FLORIDA.**
>
> **COMMONLY KNOWN AS: 24700 WALKABOUT RANCH ROAD, SORRENTO, FL 32778**

5.  Movant is the holder of the Note Secured by the Mortgage encumbering the property claimed by the Debtor to be part of the bankruptcy estate and is a party in interest in this bankruptcy proceeding.

6.  On November 17, 2006, Joseph R Shapiro executed a Promissory Note in the principal amount of $400,000.00 (herein, the "Note"). A copy of the Note is attached as Exhibit "A" and incorporated by reference.

7.  The Note was secured by a Mortgage which was recorded as Book 03328, Page 1890-1905 on December 19, 2006. A copy of the Mortgage is attached as Exhibit "B" and incorporated by reference.

8.   Joseph R Shapiro has defaulted under the terms of the Note and Mortgage by failing to timely tender the payments due. As of March 22, 2019, the Debtor's loan is contractually due for May 1, 2013.

9.   The post-petition payment address of the Movant is: CALIBER HOME LOANS, INC., P.O. Box 650856, Dallas, TX 75265.

10. As of March 22, 2019, there is due and owing from the Debtor to Movant pursuant to the terms of Exhibits "A" and "B" the principal amount of $364,363.17, together with interest from April 1, 2013, additional advances made to protect the security granted, other expenses, costs of this action and attorney's fees.

11. Movant has not been offered and does not have adequate protection of its interest in the Property.  Moreover, Movant cannot be certain that the real property is insured or will remain insured or that the property is being maintained.

12. According to the Lake County Property Appraiser, the current value of the subject property is $446,363.00.  A copy is hereby attached as Exhibit "C".

13. Filing of the Petition under the Bankruptcy Code has stayed Movant from proceeding with its state court rights.

14. Movant is entitled to relief from the automatic stay because the Debtor has no equity in the Property and the interest of the Debtor and/or Trustee herein is inferior and subordinate to the interest of the Movant.

15. Movant requests a waiver of the fourteen (14) day stay under Rule 4001(a)(3) of the Order granting relief so that Movant may pursue *in rem* remedies without further delay.

16. Movant seeks the award of fees and costs of $931.00 for the prosecution of this motion as provided for and allowed under the terms of the Mortgage.

PH # 95678                                        3

17. Movant is entitled to adequate protection of its interests in the subject real property and requests the Court to require the Debtor to make adequate protection payments; and if no such adequate protection can be provided, Movant prays for entry of an Order granting relief from the stay of 11 U.S.C. §362 to permit Movant to proceed with its state court rights.

18. Movant requests permission to communicate with the Debtor and Debtor's counsel to the extent necessary to comply with applicable non-bankruptcy law.

WHEREFORE, Movant requests that this Court modify the stay under 11 U.S.C. §362(d) and permit it to proceed with its State Court rights under the terms of the Mortgage and Note, requests that the fourteen-day extension of the stay under Rule 4001(a)(3) be waived, award bankruptcy fees and costs in the amount of $931.00, permit it to communicate with the Debtor and counsel in order to comply with applicable non-bankruptcy law, and requests such additional relief as is just.

/s/ Stefan Beuge, Esquire
Stefan Beuge, Esq., Florida Bar No. 68234
Phelan Hallinan Diamond & Jones, PLLC
2001 NW 64th Street
Suite 100
Ft. Lauderdale, FL 33309
Tel: 954-462-7000 Ext. 56588
Fax: 954-462-7001
Email: stefan.beuge@phelanhallinan.com
FLMD.bankruptcy@phelanhallinan.com

PH # 95678                                4

## PROOF OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, and any

applicable exhibits attached thereto, has been served electronically, or routed for service by U.S.

Mail, to the following:

LISA DUTTON LOVE
24700 WALKABOUT RANCH RD.
SORRENTO, FL 32776

K HUNTER GOFF
LAW OFFICES OF K HUNTER GOFF, P.A.
600 NORTH US HIGHWAY 27, SUITE 6
MINNEOLA, FL 34715

ARVIND MAHENDRU, (TRUSTEE)
5703 RED BUG LAKE ROAD
SUITE 284
WINTER SPRINGS, FL 32708

UNITED STATES TRUSTEE (SERVED ELECTRONICALLY)
OFFICE OF THE UNITED STATES TRUSTEE
GEORGE C YOUNG FEDERAL BUILDING
400 WEST WASHINGTON STREET, SUITE 1100
ORLANDO, FLORIDA 32801

Date: __April 11, 2019__           /s/ Stefan Beuge, Esquire
                                   Stefan Beuge, Esq., Florida Bar No. 68234
                                   Phelan Hallinan Diamond & Jones, PLLC
                                   2001 NW 64th Street
                                   Suite 100
                                   Ft. Lauderdale, FL 33309
                                   Tel: 954-462-7000 Ext. 56588
                                   Fax: 954-462-7001
                                   Email: stefan.beuge@phelanhallinan.com
                                   FLMD.bankruptcy@phelanhallinan.com

PH # 95678

# Exhibit "A"

*Shapiro*

# NOTE

MIN:

| NOVEMBER 17, 2006 | SANTA ANA | . | CALIFORNIA |
| [Date] | [City] | | [State] |

24700 WALKABOUT RANCH ROAD
SORRENTO, FL 32776
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $    400,000.00   (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is
GREENLIGHT FINANCIAL SERVICES

I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of    6.375 %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

**3. PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the       1st    day of each month beginning on    JANUARY , 2007      . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below
that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to
interest before Principal. If, on    DECEMBER 01, 2036    , I still owe amounts under this Note, I will pay those amounts
in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at
PO BOX 54345, IRVINE, CA 92619-4345

or at a different place if required by the Note Holder.
   (B) Amount of Monthly Payments
   My monthly payment will be in the amount if U.S. $    2,495.48   .

**4. BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not
designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of
my monthly payment unless the Note Holder agrees in writing to those changes.

Loan Number:                                                                            Initials:_____
FLORIDA FIXED RATE NOTE -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3210 1/01
                                        Page 1 of 3

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Initials: _____

Loan Number ████

FLORIDA FIXED RATE NOTE -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3210 1/01

Page 2 of 3

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
JOSEPH R SHAPIRO                -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower

Pay To The Order Of        *(Sign Original Only)*

Pay to the order of:
IndyMac Bank, F.S.B.

......... Services
.........                                  Without Recourse
................CLLER                       IndyMac Bank, F.S.B.
                                           By: _____
                                           Brian Brouillard
                                           First Vice President

Loan Number _____

FLORIDA FIXED RATE NOTE -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3210 1/01
Page 3 of 3

# Exhibit "B"

```
CFN   2006184285
Bk 03328 Pgs 1890 - 1905; (16pgs)
DATE: 12/19/2006  10:15:14 AM
JAMES C. WATKINS, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 137.50
MTG DOC 1,400.00
INTANGIBLE 800.00
```

LSI
700 CHERRINGTON PKY
CORAOPOLIS, PA 15108 9969

After Recording Return To:
GREENLIGHT FINANCIAL SERVICES
8105 IRVINE CENTER DRIVE #100
IRVINE, CA 92618

This instrument prepared by or under the supervision of:

8105 IRVINE CENTER DRIVE #100
IRVINE, CA 92618

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated    NOVEMBER 17, 2006
together with all Riders to this document.
(B)    "Borrower" is
JOSEPH R SHAPIRO, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.    MERS is the mortgagee under this Security Instrument.    MERS is organized and existing under the laws of Delaware, and has    an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan Number                                                                Initials: JR S

FLORIDA — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3010 1/01
(Page 1 of 15)                                                            C30061FL

(D)    "Lender" is
GREENLIGHT FINANCIAL SERVICES

Lender is a      S-CORPORATION                                        organized and existing under the
laws of      CALIFORNIA                                              . Lender's address is
8105 IRVINE CENTER DRIVE #100
IRVINE, CA 92618

(E)    "Note" means the promissory note signed by Borrower and dated      NOVEMBER 17, 2006
The Note states that Borrower owes Lender
FOUR HUNDRED THOUSAND AND 00/100
Dollars (U.S. $         400,000.00      ) plus interest. Borrower has promised to pay this debt
in regular Periodic Payments and to pay the debt in full not later than      DECEMBER 01, 2036
(F)    "Property" means  the property that is described below under the heading "Transfer of Rights in the
Property."
(G)    "Loan" means  the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H)    "Riders" means  all Riders to this Security Instrument that are executed by Borrower.  The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider     ☐ 1-4 Family Rider
☐ Other(s) [specify]         ☐ Planned Unit Development Rider

(I)    "Applicable Law" means  all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.
(K)    "Electronic Funds Transfer" means  any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions,
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)    "Escrow Items" means those items that are described in Section 3.
(M)    "Miscellaneous Proceeds" means  any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)
conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition
of the Property.
(N)    "Mortgage Insurance" means  insurance protecting Lender against the nonpayment of, or default on,
the Loan.

Loan Number ▓▓▓▓▓▓                                                   Initials: JRS

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3010 1/01
(Page 2 of 15)                                      C30002FL

(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County of    LAKE                                    :

SEE ATTACHED EXHIBIT A

Parcel Number:    .. 18-19-28-000100000109
which currently has the address of
24700 WALKABOUT RANCH ROAD
                                        [Street]
SORRENTO                                            , Florida   32776
        [City]                                                  [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower understands and agrees that MERS holds only legal title  to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or  custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any  or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take  any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Loan Numb [redacted]                                           Initials: [signature]

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010 1/01
                        (Page 3 of 15)                                                   C30083FL

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance

on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.
Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. *Charges; Liens.* Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents

Loan Number █████████        Initials: _JR S_

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3010 1/01
*(Page 5 of 15)*        C3006SFL

on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in. legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquake and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Loan Number ▓▓▓▓▓▓▓                                                          Initials: _JL S_

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010 1/01
*(Page 6 of 15)*                                                              C30066FL

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent

Loan Number ▮▮▮▮▮▮▮▮                                          Initials: _____

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3010 1/01
                                   (Page 7 of 15)                                  C30067FL

gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connections with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be nonrefundable, notwithstanding the fact that the Loan is ultimately paid in full,and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Loan Number [redacted]

Initials: [handwritten]

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
*(Page 8 of 15)*

Form 3010 1/01
C30068FL

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.
party to the Mortage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source if funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

Loan Number [redacted]

Initials: [handwritten]

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
*(Page 9 of 15)*

Form 3010 1/01
C30069FL

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan Number ▮▮▮▮▮▮▮                                               Initials: _____

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3010 1/01
*(Page 10 of 15)*                                                            C3006AFL

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly require otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower.   As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

---

Loan Number ▓▓▓▓▓▓                                                      Initials: _____

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3010 1/01
*(Page 11 of 15)*                                                               C3006BFL

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for

purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Loan Number

Initials: _____

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
*(Page 13 of 15)*

Form 3010 1/01
C3006DFL

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:
Witnesses:

_____        _____ (Seal)
                                  JOSEPH R SHAPIRO           -Borrower

_____        _____ (Seal)
Printed Name                                                 -Borrower

_____        _____ (Seal)
                                                             -Borrower

_____        _____ (Seal)
Printed Name                                                 -Borrower

                                  _____ (Seal)
                                                             -Borrower

                                  _____ (Seal)
                                                             -Borrower

Loan Number: ▮▮▮▮▮▮

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3010 1/01
                        (Page 14 of 15)                                      C3006EFL

Book3328/Page1903    CFN#2006184285                    Page 14 of 16

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF FLORIDA

COUNTY OF _LAKE_

The foregoing instrument was acknowledged before me this _17th_ day of _November_ , by
JOSEPH R SHAPIRO

who is personally known to me or who has produced _FLORIDA DRIVERS LICENSE_
as identification.

(Seal)

Signature of person taking acknowledgment _Debbie A. Olmstead_
Printed Name: _DEBBIE A. OLMSTEAD_
Title or Rank: _Notary_
Serial Number, if any: _DD 489937_

NOTARY PUBLIC-STATE OF FLORIDA
Debbie A. Olmstead
Commission # DD489937
Expires: MAR. 23, 2007
Bonded Thru Atlantic Bonding Co., Inc.

Loan Number: ███████

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010 1/01
(Page 15 of 15)          C3006FFL

Chicago Title Insurance Company

Commitment Number: ▓▓▓▓▓

**SCHEDULE C**
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

All that certain land in LAKE County, State of FLORIDA, viz:

THE EAST 605.00 FEET OF THE NORTHWEST ¼ OF THE NORTHEAST ¼ OF SECTION 18, TOWNSHIP 19 SOUTH, RANGE 28 EAST, LAKE COUNTY, FLORIDA.

Parcel/Tax I.D. #:  18-19-28-000100000109

Commonly known as:  24700 Walkabout Ranch Road, Sorrento, FL  32776

ALTA Commitment
Schedule C

Book3328/Page1905      CFN#2006184285                    Page 16 of 16

CFN  2009001516
Bk 03717 Ps 1380; (1ps)
DATE: 01/07/2009  12:53:05 PM
NEIL KELLY, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 10.00
INDEXING FEES 1.00

Prepared by:    Karen A. Thompson, Esquire

Record & Return to: Law Office of Marshall C. Watson

**RECORD AND RETURN TO** ➔  1800 NW 49th Street, Suite 120
Fort Lauderdale, Florida 33309
Telephone:    (954) 453-0365
Facsimile:     (954) 771-6052

### ASSIGNMENT OF MORTGAGE

*KNOW ALL MEN BY THESE PRESENTS:*

*THAT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR
GREENLIGHT FINANCIAL SERVICES* residing or located at _1595 Springhill Rd # 310 Vienna_
_VA 5218?_____ herein designated as the assignor, for and in consideration of the sum
of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby
grant, bargain, sell, assign, transfer and set over unto INDYMAC BANK F.S.B. residing or located at _7700 W._
_Parmer LN. Bldg D  Austin, TX 78729_____ herein designated as the assignee, the
mortgage executed by JOSEPH R SHAPIRO A/K/A JOSEPH RICHARD SHAPIRO recorded **December 19, 2006** in
Lake County, Florida at Book **3328** and Page **1890** encumbering the property more particularly described as follows:

THE EAST 605.00 FEET OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF
SECTION 18, TOWNSHIP 19 SOUTH, RANGE 28 EAST, LAKE COUNTY, FLORIDA.

together with the note and each and every other obligation described in said mortgage and the money due and to
become due thereon

TO HAVE AND TO HOLD the same unto the said assignee, its successors and assigns forever, but without recourse
on the undersigned, effective as of _____.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its
proper corporate officers and its corporate seal to be hereto affixed this _25_ day of _Nov_
_2008._

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INCORPORATED AS NOMINEE FOR
GREENLIGHT FINANCIAL SERVICES

ATTEST: _Erica W Johnson-Seck_
PRINT NAME: Erica A Johnson-Seck
                              **Vice President**

Signed in the presence of:

WITNESS: _____
Print Name: _Montavo Garcia_

WITNESS: _____
Print Name: _Toby Crabtree_

STATE OF _Texas_____

COUNTY OF __Williamson_____

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this
the _25_ day of _Nov_____ _2008_, within my jurisdiction, the within named who
acknowledged to me that (s)he is _Erica A. Johnson-Seck_____ and who are personally
known to me or has provided _____ as identification, that for and on behalf of Mortgage Electronic
Registration Systems Incorporated As Nominee For Greenlight Financial Services and as its act and deed (s)he
executed the above and foregoing instrument, after first having been duly authorized by Mortgage Electronic
Registration Systems Incorporated As Nominee For Greenlight Financial Services to do so.

WITNESS my hand and official seal in the County and State last aforesaid this _25_ day of _
_Nov_,2008.

_Mai Tro_
NOTARY PUBLIC



MAI LA THAO
Notary Public, State of Texas
My Commission Expires
June 15, 2011

INS
NEIL KELLY, LAKE COUNTY CLERK OF THE CIRCUIT COURT
REC FEES: $10.00

RECORD & RETURN TO:
Law Office of Marshall C. Watson, P.A.
1800 NW 49th Street, Suite 120
Fort Lauderdale, Florida 33309
Telephone: (954) 453-0365
Facsimile: (954) 771-6052

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS:**

**THAT** FDIC AS RECEIVER FOR **INDYMAC BANK F.S.B.** residing or located at **888 E. Walnut Street PASADENA, CA 91101** herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto **ONEWEST BANK FSB** residing or located at: INDYMAC BANK, 888 E. Walnut Street PASADENA, CA 91101 herein designated as the assignee, the mortgage executed by JOSEPH R SHAPIRO A/K/A JOSEPH RICHARD SHAPIRO recorded December 19, 2006 in Lake County, Florida at **BOOK 3328** and **PAGE 1890** encumbering the property more particularly described as follows:

THE EAST 605.00 FEET OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 18, TOWNSHIP 19 SOUTH, RANGE 28 EAST, LAKE COUNTY, FLORIDA.

TO HAVE AND TO HOLD the same unto the said assignee, its successors and assigns forever, but without recourse on the undersigned.

This assignment/deed is made without recourse, representation or warranty, express or implied, by the FDIC in any capacity

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by an attorney in fact of the client and its corporate seal to be hereto affixed this _____ day of MAR 29 2011 , 2011.

FEDERAL DEPOSIT INSURANCE CORPORATION AS
RECEIVER FOR INDYMAC BANK, FSB

ATTEST: _____

PRINT NAME: Roger Stotts

**Attorney in Fact**

Signed in the presence of:

WITNESS: _____
Print Name: Pat Dorsey

WITNESS: _____
Print Name: Stacey F Jones

STATE OF Texas.
COUNTY OF Travis

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the _____ 29 day of March 2011, within my jurisdiction, the within named who acknowledged to me that (s)he is Attorney in Fact and who is personally known to me or has provided Texas drivers license as identification, that for and on behalf of FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, FSB and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, FSB to do so.

WITNESS my hand and official seal in the County and State last aforesaid this 29 day of March, 2011.

_____
NOTARY PUBLIC

Jennifer Gilliam
Notary Public
State of Texas
My Commission Expires
April 11, 2011

Prepared by: wdouglas
Robertson, Anschutz & Schneid, P.L.
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Fax: 561-241-9181

RETURN

INSTRUMENT #2014019085
OR BK 4442 PG 1689 - 1689 (1 PGS)
DATE: 2/20/2014 11:03:13 AM
NEIL KELLY, CLERK OF THE CIRCUIT COURT
LAKE COUNTY
RECORDING FEES $10.00

## ASSIGNMENT OF MORTGAGE

**ONEWEST BANK FSB, its successors and/or assigns, "Assignor"** whose address is c/o Ocwen Loan Servicing, LLC, 1100 Virginia Drive, Suite 175, Fort Washington, PA 19034, in consideration for the sum of Ten Dollars and 00/100 cents, and other valuable considerations received from or on behalf of:

OCWEN LOAN SERVICING, LLC, "Assignee" whose address is 1100 Virginia Drive, Suite 175, Fort Washington, PA 19034 at or before the enseating and delivery of these presents the receipt whereof is hereby acknowledged, did grant, bargain, sell, assign, transfer and set over unto the Assignee the certain Mortgage bearing the date of **November 17, 2006** by JOSEPH R SHAPIRO in favor of **Mortgage Electronic Registration Systems, Inc. as nominee for GREENLIGHT FINANCIAL SERVICES** and recorded in Official Record Book 3328 at Page 1890 of the Public Records of Lake County, Florida upon the following land in said county:

**THE EAST 605.00 FEET OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 18, TOWNSHIP 19 SOUTH, RANGE 28 EAST, LAKE COUNTY, FLORIDA.**

That is described in the aforementioned Mortgage.

TO HAVE AND TO HOLD the same unto the Assignee, heirs, legal representatives, successors and assigns forever.

IN WITNESS WHEREOF the assignor has caused signed (and sealed, as applicable) this Assignment of Mortgage.

Witnesses:        Assignor(s)                ONEWEST BANK FSB

_Stephanie Rhoads_                    by: _Lori Ann Dasch_  1-30-14
witness signature
Stephanie Rhoads                    Its: **Authorized Signer**
printed name                             **Ocwen Loan Servicing, LLC**
_Caroline Cochran_                        **Attorney in Fact**
witness signature
Caroline Cochran
printed name

STATE OF    **PENNSYLVANIA**

COUNTY OF    **MONTGOMERY**

The foregoing instrument was acknowledged before me this 30 day of January, 2014 by Lori Ann Dasch as Authorized Signer, Ocwen Loan Servicing, LLC, Attorney in Fact of ONEWEST BANK FSB on behalf of the assignor. S/he is personally known to me or has produced _license_ as identification.

_Kelly T. Cunningham_
NotaryPublic                Kelly T. Cunningham

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KELLY T. CUNNINGHAM, Notary Public
City of Philadelphia, Phila. County
My Commission Expires February 24, 2016

When Recorded Return To:
Indecomm Global Services
1260 Energy Lane
St. Paul, MN 55108

This instrument was prepared by:
Naveenkumar N
1260 Energy Lane
ST Paul, MN 55108

## Assignment of Mortgage

Dated: August 11, 2015

Loan:
Investor #:
Reference
Package
Documer

For value received Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409, the undersigned hereby grants, assigns and transfers to Federal National Mortgage Association, its successors or assigns, 14221 Dallas Parkway, Suite 1000, Dallas, TX 75254, all beneficial interest under a certain Mortgage dated November 17, 2006 executed by JOSEPH R SHAPIRO, AN UNMARRIED MAN and recorded in Book 3328 on Page(s) 1890 as Document Number 2006184285 on December 19, 2006 of the official records of the County Recorder of Lake County, Florida.

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments

WITNESSES:

Witness 1: Rufus Weah

Witness 2: Marjorie Gardner

Ocwen Loan Servicing, LLC

By:

Samuel Dane Strandmo,
Assistant Secretary

STATE OF Minnesota
COUNTY Ramsey            ) SS

On August 11, 2015 before me, Dawn J Peck , Notary Public in and for said State personally appeared Samuel Dane Strandmo , Assistant Secretary of Ocwen Loan Servicing, LLC, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Dawn J Peck, Notary Public
My Commission expires: January 31, 2018

DAWN J. PECK
Notary Public-Minnesota
My Commission Expires Jan 31, 2018

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

CHL Loan Number ▮▮▮▮▮▮▮
Fannie Mae Loan No ▮▮▮▮▮▮▮
NTC Number ▮▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 5600 GRANITE PKWY., BUILDING VII, PLANO, TX 75024, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST, WHOSE ADDRESS IS 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was made by **JOSEPH R SHAPIRO** and recorded in Official Records of the Clerk of the Circuit Court of **LAKE** County, **Florida,** in **Book 03328 and Page 1890,** upon the property situated in said State and County as more fully described in said Mortgage.

**Dated this 19th day of February in the year 2019**
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact**

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

CORPORATE
--
SEAL

**CARLY MALLIET**
**WITNESS**

**ALAN BAKER**
**WITNESS**

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
FNMA ▮▮▮▮▮▮▮    DOCH ▮▮▮▮▮▮▮

CHL Loan Numbe ███
Fannie Mae Loan N ███
NTC Number ███

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 19th day of February in the year 2019, by Susan Hicks as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Alyssa Say_
**ALYSSA SAY**
**COMM EXPIRES: 10/02/2022**

ALYSSA SAY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG249609
EXPIRES: 10/2/2022

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North. Palm Harbor. FL 34683 (800)346-9152
FNM/ ███                    DOCR ███

# Exhibit "C"

Select Language ▼

# PROPERTY RECORD CARD

## General Information

| | | | |
|---|---|---|---|
| Owner Name: | LOVE LISA D | Alternate Key: | 1597218 |
| Mailing Address: | 24700 WALKABOUT RANCH RD SORRENTO, FL 32776 *Update Mailing Address* | Parcel Number: | 18-19-28-0001-000-00109 |
| | | Millage Group and City: | 0006 (UNINCORPORATED) |
| | | Total Certified Millage Rate: | 14.7606 |
| | | Trash/Recycling/Water/Info: | *My Public Services Map* |
| Property Location: | 24700 WALKABOUT RANCH RD SORRENTO FL 32776 *Update Property Location* | Property Name: | -- *Submit Property Name* |
| | | School Information: | *School Locator & Bus Stop Map* *School Boundary Maps* |
| Property Description: | E 605 FT OF NW 1/4 OF NE 1/4 \| ORB 3707 PG 1595 \| | | |

NOTE: This property description is a condensed/abbreviated version of the original description as recorded on deeds or other legal instruments in the public records of the Lake County Clerk of Court. It may not include the Public Land Survey System's Section, Township, Range information or the county in which the property is located. It is intended to represent the land boundary only and does not include easements or other interests of record. This description should not be used for purposes of conveying property title. The Property Appraiser assumes no responsibility for the consequences of inappropriate uses or interpretations of the property description.

## Land Data

| Line | Land Use | Frontage | Depth | Notes | No. Units | Type | Class Value | Land Value |
|---|---|---|---|---|---|---|---|---|
| 1 | SINGLE FAMILY (0100) | 0 | 0 | | 1 | AC | $0.00 | $19,500.00 |
| 2 | VACANT RESIDENTIAL (0000) | 0 | 0 | | 17 | AC | $0.00 | $168,300.00 |

*Click here for Zoning Info* Map    **FEMA Flood**

## Residential Building(s)

### Building 001

| Residential | Single Family | Building Value: $200,461.00 |
|---|---|---|

| Summary | | | |
|---|---|---|---|
| Year Built: 2002 | Total Living Area: 2489 | Central A/C: Yes | Attached Garage: Yes |
| Bedrooms: 4 | Full Bathrooms: 2 | Half Bathrooms: 1 | Fireplaces: 1 |

*Incorrect Bedroom, Bath, or other information?*

| Section(s) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Section No. | Section Type | Ext. Wall Type | No. Stories | Floor Area | Finished Attic | Basement | Basement Finished | Map Color |

| 1 | FINISHED LIVING AREA (FLA) | Stucco/Brick (003) | 1 | 2489 | N | 0% | 0% |
| 2 | OPEN PORCH FINISHED (OPF) | No Wall Type (000) | 1 | 176 | N | 0% | 0% |
| 3 | GARAGE FINISHED STONE (GCF) | Stucco/Brick (003) | 1 | 504 | N | 0% | 0% |
| 4 | OPEN PORCH FINISHED (OPF) | No Wall Type (000) | 1 | 516 | N | 0% | 0% |

View Larger / Print / Save



## Miscellaneous Improvements

| No. | Type | No. Units | Unit Type | Year | Depreciated Value |
|---|---|---|---|---|---|
| 0001 | SWIMMING POOL (POL) | 420 | SF | 2003 | $10,889.00 |
| 0002 | POOL DECKING (PLD) | 612 | SF | 2003 | $2,305.00 |
| 0003 | CARPORT/POLE SHED - UNFINISHED (UCP) | 4800 | SF | 2003 | $19,123.00 |
| 0004 | UTILITY BUILDING - UNFINISHED (UBU) | 360 | SF | 2003 | $742.00 |
| 0005 | BARN (BRN) | 2240 | SF | 2003 | $22,203.00 |
| 0006 | SCREENED ENCLOSED STRUCTURE (SEN) | 2121 | SF | 2005 | $2,840.00 |

## Sales History

**NOTE:** This section is not intended to be a complete chain of title. Additional official book/page numbers may be listed in the property description above and/or recorded and indexed with the Clerk of Court. Follow this link to search all documents by owner's name.

| Book/Page | Sale Date | Instrument | Qualified/Unqualified | Vacant/Improved | Sale Price |
|---|---|---|---|---|---|
| 3707 / 1595 | 12/2/2008 | Probate Order | Unqualified | Improved | $0.00 |

http://www.lakecopropappr.com/property-details.aspx?AltKey=1597218

3/28/2019

| | | | | | |
|---|---|---|---|---|---|
| 2391 / 1638 | 8/20/2003 | Warranty Deed | Qualified | Improved | $540,000.00 |
| 1980 / 2187 | 7/27/2001 | Warranty Deed | Qualified | Vacant | $125,000.00 |
| 662 / 2075 | 1/1/1978 | Misc Deed/Document | Qualified | Vacant | $30,000.00 |

*Click here to search for mortgages, liens, and other legal documents.* ⓘ

## Values and Estimated Ad Valorem Taxes ⓘ

Values shown are 2019 WORKING VALUES subject to change until certified.
The Market Value listed below is not intended to represent the anticipated selling price of the property and should not be relied upon by any individual or entity as a determination of current market value.

| Tax Authority | Market Value | Assessed Value | Taxable Value | Millage | Estimated Taxes |
|---|---|---|---|---|---|
| LAKE COUNTY BCC GENERAL FUND | $446,363 | $446,363 | $446,363 | 5.11800 | $2,284.49 |
| LAKE COUNTY MSTU AMBULANCE | $446,363 | $446,363 | $446,363 | 0.46290 | $206.62 |
| LAKE COUNTY MSTU FIRE | $446,363 | $446,363 | $446,363 | 0.47040 | $209.97 |
| SCHOOL BOARD STATE | $446,363 | $446,363 | $446,363 | 4.10700 | $1,833.21 |
| SCHOOL BOARD LOCAL | $446,363 | $446,363 | $446,363 | 2.24800 | $1,003.42 |
| LAKE COUNTY MSTU STORMWATER | $446,363 | $446,363 | $446,363 | 0.49570 | $221.26 |
| ST JOHNS RIVER FL WATER MGMT DIST | $446,363 | $446,363 | $446,363 | 0.25620 | $114.36 |
| LAKE COUNTY VOTED DEBT SERVICE | $446,363 | $446,363 | $446,363 | 0.13240 | $59.10 |
| LAKE COUNTY WATER AUTHORITY | $446,363 | $446,363 | $446,363 | 0.49000 | $218.72 |
| NORTH LAKE HOSPITAL DIST | $446,363 | $446,363 | $446,363 | 0.98000 | $437.44 |
| | | | | Total: 14.7606 | Total: $6,588.59 |

## Exemptions Information

**This property is benefitting from the following exemptions with a checkmark ✓**

| | | |
|---|---|---|
| Homestead Exemption (first exemption up to $25,000) | *Learn More* | *View the Law* |
| Additional Homestead Exemption (up to an additional $25,000) | *Learn More* | *View the Law* |
| Limited Income Senior Exemption (applied to county millage - up to $50,000) | *Learn More* | *View the Law* |
| Limited Income Senior Exemption (applied to city millage - up to $25,000) ⓘ | *Learn More* | *View the Law* |
| Limited Income Senior 25 Year Residency (county millage only - exemption amount varies) | *Learn More* | *View the Law* |
| Widow / Widower Exemption (up to $500) | *Learn More* | *View the Law* |
| Blind Exemption (up to $500) | *Learn More* | *View the Law* |
| Disability Exemption (up to $500) | *Learn More* | *View the Law* |

| | | |
|---|---|---|
| Total and Permanent Disability Exemption (amount varies) | *Learn More* | *View the Law* |
| Veteran's Disability Exemption ($5000) | *Learn More* | *View the Law* |
| Veteran's Total and Permanent Disability Exemption (amount varies) | *Learn More* | *View the Law* |
| Veteran's Combat Related Disability Exemption (amount varies) | *Learn More* | *View the Law* |
| Deployed Servicemember Exemption (amount varies) | *Learn More* | *View the Law* |
| First Responder Total and Permanent Disability Exemption (amount varies) | *Learn More* | *View the Law* |
| Surviving Spouse of First Responder Exemption (amount varies) | *Learn More* | *View the Law* |
| Conservation Exemption (amount varies) | *Learn More* | *View the Law* |
| Tangible Personal Property Exemption (up to $25,000) | *Learn More* | *View the Law* |
| Religious, Charitable, Institutional, and Organizational Exemptions (amount varies) | *Learn More* | *View the Law* |
| Economic Development Exemption | *Learn More* | *View the Law* |
| Government Exemption (amount varies) | *Learn More* | *View the Law* |

## Exemption Savings ⓘ

**The exemptions marked with a ✓ above are providing a tax dollar savings of:**
**$0.00**

## Assessment Reduction Information (3% cap, 10% cap, Agricultural, Portability, etc.)

**This property is benefitting from the following assessment reductions with a checkmark ✓**

| | | |
|---|---|---|
| Save Our Homes Assessment Limitation (3% assessed value cap) | *Learn More* | *View the Law* |
| Save Our Homes Assessment Transfer (Portability) | *Learn More* | *View the Law* |
| Non-Homestead Assessment Limitation (10% assessed value cap) | *Learn More* | *View the Law* |
| Conservation Classification Assessment Limitation | *Learn More* | *View the Law* |
| Agricultural Classification | *Learn More* | *View the Law* |

## Assessment Reduction Savings ⓘ

**The assessment reductions marked with a ✓ above are providing a tax dollar savings of: $0.00**

http://www.lakecopropappr.com/property-details.aspx?AltKey=1597218          3/28/2019

**NOTE:** Information on this Property Record Card is compiled and used by the Lake County Property Appraiser for the sole purpose of ad valorem property tax assessment administration in accordance with the Florida Constitution, Statutes, and Administrative Code. The Lake County Property Appraiser makes no representations or warranties regarding the completeness and accuracy of the data herein, its use or interpretation, the fee or beneficial/equitable title ownership or encumbrances of the property, and assumes no liability associated with its use or misuse. See the posted Site Notice.

Copyright © 2014 Lake County Property Appraiser. All rights reserved.
Property data last updated on March 24, 2019.
Site Notice